**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------- x
AVIS QUEZADA,                    :
                                 :
        Plaintiff,               :
                                 :
v.                               :   Civil No. 3:22-cv-77 (AWT)
                                 :
CITY OF WATERBURY, SGT. JEFFREY  :
HAMEL, and OFC. FERNANDO LUCAS,  :
                                 :
        Defendants.              :
------------------------------- x
```

<u>**RULING ON MOTION TO DISMISS**</u>

Defendants City of Waterbury, Jeffrey Hamel, and Fernando Lucas have moved to dismiss plaintiff Avis Quezada's Second Amended Complaint. For the reasons set forth below, the motion is being granted in part and denied in part.

**I.   FACTUAL ALLEGATIONS**

"The [second amended] complaint, which [the court] must accept as true for purposes of testing its sufficiency, alleges the following circumstances." <u>Monsky v. Moraghan</u>, 127 F.3d 243, 244 (2d Cir. 1997).

"On May 13, 2020, plaintiff Quezada was taken into custody by the Waterbury Police Department pending criminal charges." Second Am. Compl. (ECF No. 36) ¶ 7. "Plaintiff Quezada was placed by the Waterbury Police Department into its Holding Facility pending his arraignment in the Waterbury Superior Court." <u>Id.</u> ¶ 8. "Pursuant to the practice, custom, and policy

of Waterbury, implemented by the Waterbury Police Department,
the Holding Facility in which plaintiff was placed was
unsanitary and unclean, unwashed and covered in filth, with
dirty toilet paper and hair on the floor and grime on the walls
and floor; the cells were kept at an extremely cold temperature
due to excessive air conditioning. These unsafe, unhealthy and
unsanitary conditions provoked numerous complaints by plaintiff
Quezada and other occupants of the cells at the Holding
Facility. In addition, occupants of cells in the Holding
Facility such as plaintiff were, pursuant to Waterbury custom,
practice, and policy, provided only two meals daily (at 11:00
a.m. and 5:00 p.m.), leaving cell occupants without nourishment
for over 18 hours each day." Id. ¶ 9.

"Sergeant Hamel and the other Waterbury police members
reporting to him were aware of the conditions at the Holding
Facility and the custom, practice, and policy of Defendant
Waterbury pertaining to same as described in paragraph 9, above.
Despite the repeated complaints of plaintiff and other cell
occupants, Waterbury, through defendant Hamel and other members
of the Police Department refused to maintain the Holding
Facility at an appropriate and healthy temperature, refused to
increase the amount or timing of food provided, and refused to
ensure the Holding Facility was clean and not a danger to the
health and welfare to the inmates at the Holding Facility.

Sergeant Hamel and the other members of the Waterbury Police
Department reporting to him failed to so act despite awareness
of said conditions, the ability and authority to correct the
situation, and with the intention to impose and maintain such
unsafe, unhealthy and unsanitary conditions, failed to act with
reasonable care to mitigate the risks imposed by said
conditions, all with reckless disregard to the inmates and
despite knowledge of the inherent risks of harm in doing so.
Sergeant Hamel and the other members of the Waterbury Police
Department reporting to him knew, or should have known, that his
failure to take appropriate action to correct the conditions
complained of posed an unwarranted health risk to the inmates at
the Holding Facility and that the intentional maintenance of
said conditions per the custom, practice, and policy of
Waterbury was dangerous to the inmates at the Holding Facility."
Id. ¶ 10.

    "As a result of the unsafe, unhealthy and unsanitary
conditions in the Holding Facility and lack of proper
nourishment, plaintiff became ill. On May 14, 2020 was
transported to St. Mary's Hospital for treatment and care.
Plaintiff was diagnosed with pneumonia and was prescribed
medication, which was provided to the Waterbury Police
Department for dispensing to plaintiff as directed." Id. ¶ 11.
"Plaintiff was discharged but returned on May 15, 2020 for

additional treatment related to his pneumonia. He was kept
overnight and discharged on May 16, 2020." Id. ¶ 12.

"On May 14, 2020, and again on May 16, 2020, Plaintiff was
returned to the Holding Facility and the unsafe, unhealthy and
unsanitary conditions described above. Plaintiff's his
medication was not dispensed to him by the Waterbury Police
Department despite direct requests to do so by plaintiff. As a
direct and proximate result of being returned to the unsafe,
unhealthy and unsanitary conditions of the Holding Facility, the
failure to provide proper nourishment, and the failure to
provide the medication to plaintiff, all in conformance with the
practice, custom, and policy of Waterbury as overseen by
defendant Hamel, plaintiff's condition worsened, and on May 17,
2020, plaintiff was transported back to St. Mary's Hospital for
care and treatment by Officer Lucas." Id. ¶ 13.

"While at St. Mary's Hospital and awaiting treatment,
plaintiff was placed under the supervision and care of Officer
Lucas, who handcuffed plaintiff's left arm and leg to the
hospital bed. Plaintiff asked Officer Lucas if he could use the
remote for the television and his request was denied. When asked
by plaintiff why his request was being denied, Officer Lucas
responded with racial slurs and derogatory statements. Officer
Lucas then stepped outside the room and plaintiff attempted to
reach the remote. Officer Lucas witnessed this movement by

plaintiff and returned into the room and began roughing up
plaintiff and using abusive language. When plaintiff protested
being treated in such a malicious and hurtful manner, Officer
Lucas physically assaulted plaintiff despite the fact plaintiff
was handcuffed to his hospital bed and posed no risk to Officer
Lucas. Specifically, Officer Lucas punched plaintiff several
times with his closed fist, causing physical injury to
plaintiff's eye and head, as well as emotional harm." Id. ¶ 14.
"Hospital staff interceded to stop the assault." Id. ¶ 15.

"Plaintiff was quickly discharged and again returned to the
unsafe, unhealthy and unsanitary conditions in the Holding
Facility and charged with assaulting Officer Lucas, who
proceeded to falsely fill out the Police Incident Report in an
attempt to justify his physical assault on plaintiff. Plaintiff
suffers ongoing symptoms from his illness and mistreatment
described above." Id. ¶ 16.

On January 14, 2022, plaintiff Avis Quezada, proceeding pro
se, filed suit against defendants Hamel and Lucas, the Waterbury
Police Department, and Doctor Pavlovic of St. Mary's Hospital.
After an initial review by the court, the case was dismissed
with prejudice as to the Waterbury Police Department and Doctor
Pavlovic and dismissed without prejudice as to defendant Hamel.
Pro bono counsel was appointed for the defendant on August 19,
2022, and the Amended Complaint (ECF No. 30) was filed on

October 3, 2022. It named as defendants the City of Waterbury,
Hamel, and Lucas. The Second Amended Complaint was filed on
October 31, 2022. It also named as defendants the City of
Waterbury, Hamel, and Lucas.

The defendants have moved to dismiss the Second Amended
Complaint, except for one part of the Second Count, for lack of
subject matter jurisdiction, insufficient service of process,
and failure to state a claim upon which relief can be granted.

## II.  LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(1), the
court is "not to draw inferences from the complaint favorable to
the plaintiffs." J.S. v. Attica Cent. Sch., 386 F.3d 107, 110
(2d Cir. 2004). Rather, "when the question to be considered is
one involving the jurisdiction of a federal court, jurisdiction
must be shown affirmatively, and that showing is not made by
drawing from the pleadings inferences favorable to the party
asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d
129, 131 (2d Cir. 1998) (citing Norton v. Larney, 266 U.S. 511,
515 (1925)). "In resolving a motion to dismiss for lack of
subject matter jurisdiction under Rule 12(b)(1), a district
court . . . may refer to evidence outside the pleadings."
Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

When deciding a motion to dismiss under Rule 12(b)(6), the
court must accept as true all factual allegations in the

complaint and must draw inferences in a light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 550, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 568.

"The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dep't Store Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy Distribution v. Merrill Lynch

Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993). "[I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss. A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

### III. DISCUSSION

#### A.   First Count

The First Count is a claim pursuant to 42 U.S.C. § 1983 for violation of the Fourteenth Amendment against the City of Waterbury and defendant Hamel in his official capacity.

The plaintiff named the City of Waterbury in place of the
Waterbury Police Department in the Amended Complaint and also in
the Second Amended Complaint. There appears to have been a
miscommunication between counsel as to whether counsel for the
City of Waterbury was agreeing to waive service on behalf of the
City of Waterbury. Counsel for the City of Waterbury represents
that he did not agree to do so. Adding to the confusion is the
fact that, while the docket reflects that counsel for the City
of Waterbury has entered an appearance on behalf of the City,
the appearance filed by counsel does not reflect that he has
filed an appearance on behalf of the City of Waterbury. Thus,
the court concludes that the City of Waterbury has not been
properly served.

"In the absence of service of process (or waiver of service
by the defendant), a court ordinarily may not exercise power
over a party the complaint names as defendant." Murphy Bros. v.
Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999). See
also id. ("[O]ne becomes a party officially, and is required to
take action in that capacity, only upon service of a summons or
other authority-asserting measure stating the time within which
the party served must appear and defend."). "If a defendant is
not served within 90 days after the complaint is filed, the
court . . . must dismiss the action without prejudice against
that defendant or order that service be made within a specified

time." Fed. R. Civ. P. 4(m).

Likewise, because the City of Waterbury has not been properly served, the First Count may not proceed at this time against defendant Hamel in his official capacity. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978).

Therefore, the motion to dismiss is being granted as to the First Count, with leave to make proper service on the City of Waterbury and defendant Hamel in his official capacity.

### B.   Second Count

The Second Count is a claim pursuant to 42 U.S.C. § 1983 for violation of the Fourth Amendment against defendant Lucas in his individual capacity.

The defendants move to dismiss the Second Count to the extent it is "an attempt to bring a cause of action for failure to protect." Defs.' Mem. at 9. However, the plaintiff states that he "has not asserted such a claim." Pl.'s Opp. (ECF No. 38) at 9.

Therefore, the motion to dismiss is being denied as to the Second Count.

### C.   Third Count

The Third Count is a claim for assault and battery against defendant Lucas in his individual capacity.

The defendants move to dismiss the Third Count "as duplicative of his excessive force claim" in the Second Count. Defs.' Mem. at 15. The defendants contend that "the plaintiff is not presenting two alternative theories of liability with his excessive force and state law assault and battery claims," id., but rather the claims are duplicative because the parties, facts, requested relief, and essential elements of each claim are the same, see id. at 13-14. The court disagrees.

"A plaintiff may not plead the same claim more than once, which would constitute a duplicative claim, but may plead claims that provide alternative bases for relief." In re Skat Tax Refund Scheme Litig., 356 F.Supp.3d 300, 325 (S.D.N.Y. 2019). "A claim is alternative and not duplicative if a plaintiff may fail on one but still prevail on the other." Id. "[C]ourts routinely find that a federal assault and battery claim is duplicative of a § 1983 excessive force claim," Crawley v. City of Syracuse, 2018 WL 3716782, at *3 (N.D.N.Y. Aug. 3, 2018), but as one court has explained with respect to the relationship between Section 1983 excessive force claims and assault and battery claims under state law:

> To the extent the City Defendants are arguing that
> state law assault and battery claims cannot be
> asserted in tandem with a Fourth Amendment excessive
> force claim, they are incorrect. Although state law
> assault and battery claims are "substantially
> identical" to excessive force claims, they are not
> duplicative because an excessive force claim under
> Section 1983 has the additional requirement that it
> "be committed under color of state law." Posr v.
> Doherty, 944 F.2d 91, 94-95 (2d Cir. 1991).
> Accordingly, it is well-established that a plaintiff
> may pursue a Fourth Amendment excessive force claim
> and state law assault and battery claims in the same
> action. See, e.g., Estate of Jaquez v. City of New
> York, 104 F.Supp.3d 414, 439 (S.D.N.Y. 2015); LaLonde
> v. Bates, 166 F.Supp.2d 713, 719 (N.D.N.Y. 2001).

Cascaccia v. City of Rochester, 2018 WL 324420, at *7 (W.D.N.Y.

Jan. 8, 2018). See Elgin v. McKay, 2014 WL 294424, at *5

(E.D. Mo. Jan. 27, 2014) ("Although the Court agrees the two

claims arise from the same factual circumstances, and a recovery

of damages on the 42 U.S.C. § 1983 claim has the potential to be

duplicative of any damages on the assault and battery claim, the

pleading rules permit setting forth alternative statements of a

claim in separate counts, and parties may state as many separate

claims as they have, regardless of consistency."). See also

Lieberman v. Dudley, 1998 WL 740827, at *3 (D. Conn. July 27,

1998), aff'd, 199 F.3d 1322 (2d Cir. 1999) (upholding "verdicts

for the plaintiff on the § 1983 claim based on unreasonable

force and the state law claim for assault and battery" and

finding award of damages as to each was "not duplicative merely

because it allocates damages under two distinct causes of

action").

Therefore, the motion to dismiss is being denied as to the Third Count.

### D.   Fourth Count

The Fourth Count is a claim for intentional infliction of emotional distress against defendant Lucas in his individual capacity.

The defendants maintain that the Fourth Count fails to state a claim upon which relief can be granted because "the Plaintiff has not sufficiently alleged that the distress he suffered as a result of Officer Lucas' actions was severe," Defs.' Mem. at 16, and because "Defendant's alleged conduct falls far short of 'extreme and outrageous' as that term has been defined by the courts of this State," id. at 17. The court agrees in part.

"A plaintiff claiming intentional infliction of emotional distress must establish: '(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.'" Anglero v. City of Hartford, 2020 WL 13250192, at *12 (D. Conn. Feb. 19, 2020) (quoting Little v. Yale Univ., 92

Conn. App. 232, 239 (2005)). The conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Appleton v. Stonington Bd. of Ed., 254 Conn. 205, 211 (2000). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine.... Only where reasonable minds disagree does it become an issue for the jury." Little, 92 Conn. App. at 239 (internal citations and quotation marks omitted).

The plaintiff alleges that his left arm and leg were handcuffed to a hospital bed when he asked defendant Lucas if he could use the remote for the television. Lucas denied the plaintiff's request. "When asked by plaintiff why his request was being denied, Officer Lucas responded with racial slurs and derogatory statements." Second Am. Compl. ¶ 14. Lucas stepped out of the room, and the plaintiff tried to reach the remote. Lucas saw this and returned to the room and "punched plaintiff several times with his closed fist, causing physical injury to the plaintiff's eye and head," "despite the fact plaintiff was handcuffed to his hospital bed and posed no risk to Officer Lucas." Id. The plaintiff alleges that "[h]ospital staff interceded to stop the assault." Id. ¶ 15. He also alleges that

defendant Lucas later "proceeded to falsely fill out the Police Incident Report in an attempt to justify his physical assault on plaintiff." Id. ¶ 16. These actions--repeatedly punching with a closed fist an individual who is not only hospitalized but also has an arm and a leg handcuffed to the hospital bed because that individual attempted to watch television, and doing so to such an extent that hospital staff felt they had to intervene, and then subsequently falsifying a police report to justify these actions--meet the standard for extreme and outrageous conduct that is intolerable in a civilized society. See Arias v. East Hartford, 2021 WL 3268846, at *10-12 (collecting cases).

However, the plaintiff has not alleged facts sufficient to establish that the emotional distress he sustained was severe. "Merely alleging 'extreme emotional distress' without supporting factual allegations is legally insufficient to support a claim of intentional emotional distress. . . . The supporting factual allegations must be more than conclusory statements." Zadrowski v. Town of Plainville, 2013 WL 5435491, at *12 (D. Conn. Sept. 30, 2013) (internal quotation marks and citations omitted).

As explained in Powell v. Jones-Soderman:

Powell testified that, as a result of the defamatory statements that Jones-Soderman published, he suffered headaches, sleeplessness and loss of appetite and that his social relationships also suffered. He did not seek medical treatment, and, although a failure to seek medical treatment does not preclude a finding of

severe emotional distress, <u>Birdsall v. City of Hartford</u>, 249 F. Supp. 2d 163, 175 (D. Conn. 2003), he did not testify as to the intensity and frequency of his headaches, sleeplessness and appetite fluctuation, all of which can be common responses to stress. Thus, the Court finds that Powell has not carried his burden of proof on the intentional infliction of emotional distress claim because he has failed to establish the fourth element, requiring him to establish that his emotional distress was severe.

433 F.Supp.3d 353, 378 (D. Conn. 2020), <u>aff'd</u>, 849 F. App'x 274 (2d Cir. 2021). <u>See also</u> <u>Perez-Dickson v. City of Bridgeport</u>, 304 Conn. 483, 529 (2012) ("[T]he only evidence of severe emotional distress that the plaintiff presented with respect to this conduct is that she became frightened and choked up upon being told that her career might be in jeopardy. There was no evidence that the plaintiff was in distress for an extended period or that she sought medical treatment. No reasonable juror could conclude that this constituted severe emotional distress.").

Here, the plaintiff merely alleges that being punched by Lucas caused him "emotional harm" and that he suffers "ongoing symptoms," without identifying those symptoms. Second Am. Compl. ¶¶ 14, 16. In light of the circumstances present here, however, it is unclear whether the plaintiff could plead facts that establish severe emotional distress.

Therefore, the motion to dismiss is being granted but with leave to amend as to the Fourth Count.

-16-

E.   **Fifth Count**

The Fifth Count is a claim for negligent infliction of emotional distress against defendants Hamel and Lucas in their individual capacities.

The defendants contend that the Fifth Count must be dismissed because the plaintiff's treatment by the individual defendants was the result of "a discretionary act by a municipal employee that is entitled to governmental immunity," Defs.' Mem. (ECF No. 37-1) at 20, and "in his complaint the Plaintiff did not allege the application of any of the exceptions to governmental immunity. Because he did not allege this exception in his complaint, he cannot claim that it applies now," Defs.' Reply (ECF No. 39) at 6. The court disagrees.

Under Connecticut law, "a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts." Daley v. Kashmanian, 344 Conn. 464, 479 (2022) (citation omitted). "Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature." Id. "[T]he operation of a police department is a governmental function, and . . . acts or omissions in connection therewith ordinarily do not give rise to liability on the part of the municipality." Cole v. City of New Haven, 337 Conn. 326, 338-39 (2020) (citation omitted). "Thus, as a general rule, police

officers are protected by discretionary act immunity when they perform the typical functions of a police officer." Id. (citation and brackets omitted). However, there are "three recognized exceptions to discretionary act immunity," one of which is the imminent harm exception. Violano v. Fernandez, 280 Conn. 310, 328 (2006). "The imminent harm exception to discretionary act immunity applies when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm." Id. at 329 (citation omitted). "By its own terms, this test requires three things: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." Id. (citation omitted).

The plaintiff has alleged facts sufficient to establish that the imminent harm exception applies as to defendant Lucas, but he has not done so as to defendant Hamel. With respect to defendant Lucas, all three requirements are met. The plaintiff has alleged facts which show that he was an identifiable victim at risk of imminent harm and that it was apparent to Lucas that his conduct would harm the plaintiff. See Belanger v. City of Hartford, 578 F.Supp.2d 360, 367 (D. Conn. 2008) (finding imminent harm exception applicable where police officer was alleged to have purposely swung his baton at plaintiff). With

respect to defendant Hamel, however, the plaintiff has not alleged facts showing that he was an identifiable victim at risk of imminent harm.

The defendants cite no authority in support of their contention that the imminent harm "exception must be alleged in the complaint as it was in Violano." Defs.' Reply at 6. Violano addressed the propriety of raising the governmental immunity defense through a motion to strike, the state analogue of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). The Connecticut Supreme Court explained:

> "We have previously determined that governmental immunity must be raised as a special defense in the defendant's pleadings.... Governmental immunity is essentially a defense of confession and avoidance similar to other defenses required to be affirmatively pleaded [under Practice Book § 10-50].... The purpose of requiring affirmative pleading is to apprise the court and the opposing party of the issues to be tried and to prevent concealment of the issues until the trial is underway." (Citation omitted; internal quotation marks omitted.) Westport Taxi Service v. Westport Transit District, 235 Conn. 1, 24, 664 A.2d 719 (1995); see also Gauvin v. New Haven, 187 Conn. 180, 184-85, 445 A.2d 1 (1982). Nevertheless, "[w]here it is apparent from the face of the complaint that the municipality was engaging in a governmental function while performing the acts and omissions complained of by the plaintiff, the defendant is not required to plead governmental immunity as a special defense and may attack the legal sufficiency of the complaint through a motion to strike." (Internal quotation marks omitted.) DeConti v. McGlone, 88 Conn.App. 270, 272, 869 A.2d 271, cert. denied, 273 Conn. 940, 875 A.2d 42 (2005); accord Doe v. Board of Education, 76 Conn.App.

296, 299 n. 6, 819 A.2d 289 (2003); <u>Brown v. Branford</u>, 12 Conn.App. 106, 111 n. 3, 529 A.2d 743 (1987); <u>Trzaska v. Hartford</u>, 12 Conn.Supp. 301, 302 (1943); see also <u>Evon v. Andrews</u>, 211 Conn. 501, 506-507, 559 A.2d 1131 (1989) (concluding that trial court properly granted motion to strike plaintiff's count alleging negligence against municipality and its officials because acts complained of were discretionary in nature); <u>Gordon v. Bridgeport Housing Authority</u>, 208 Conn. 161, 170, 544 A.2d 1185 (1988) ("[n]otwithstanding the procedural posture of a motion to strike, this court has approved the practice of deciding the issue of governmental immunity as a matter of law"). Determining whether it is apparent on the face of the complaint that the acts complained of are discretionary requires an examination of the nature of the alleged acts or omissions. See <u>Gauvin v. New Haven</u>, supra, at 186, 445 A.2d 1.

<u>Violano</u>, 280 Conn. at 321-22. However, "if the <u>facts</u> provable in the complaint would support a cause of action, the motion to strike must be denied." <u>Id.</u> at 318 (citation and brackets omitted and emphasis added). Thus, contrary to the defendants' contention, the imminent harm exception is not subject to special pleading requirements. Rather, a plaintiff may plead the imminent harm exception simply by alleging facts which, if true, would be sufficient to establish that the exception applies. <u>See Vazquez v. Buhl</u>, 150 Conn. App. 117, 127 (2014) (plaintiffs contesting a motion to strike on grounds of governmental immunity "could have objected to the motion on the ground that they needed the opportunity to plead additional facts, or could have sought to revise their complaint to allege facts that would

bring the complained of acts within the recognized exceptions to qualified governmental immunity").

Therefore, as to the Fifth Count, the motion to dismiss is being granted as to defendant Hamel and denied as to defendant Lucas.

**F.   Sixth Count**

The Sixth Count is a claim for indemnification against the City of Waterbury pursuant to Conn. Gen. Stat. § 7-465.

The defendants move to dismiss the Sixth Count because the plaintiff failed to provide timely notice of his claim as required by Conn. Gen. Stat. § 7-465, and because the City of Waterbury was never served.

Section 7-465 provides in relevant part:

> No action for personal physical injuries or damages to real or personal property shall be maintained against such municipality and employee jointly unless . . . written notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained has been filed with the clerk of such municipality within six months after such cause of action has accrued.

Conn. Gen. Stat. § 7-465(a). The parties dispute the proper interpretation of Section 7-465,[1] but the court need not resolve

---

[1] The court notes, however, that "the liability of the municipality . . . is dependent upon the giving of proper statutory notice." <u>Fraser v. Henninger</u>, 173 Conn. 52, 56 (1977). The statute applies where, as here, a plaintiff "seeks to determine the liability of Town employees in the first instance, and thereupon recover from the Town via its statutory assumption

that dispute at this time. Because the City of Waterbury is not a party to this action, as discussed above with respect to the First Count, the Sixth Count is being dismissed without prejudice.

### IV.  CONCLUSION

Accordingly, Defendants City of Waterbury, Jeffrey Hamel and Fernando Lucas' Motion to Dismiss (ECF No. 37) is hereby GRANTED in part and DENIED in part.

The motion to dismiss is granted with respect to the First Count and the Sixth Count, but with leave to amend and make proper service on the City of Waterbury.

The motion is granted with respect to the Fourth Count, but with leave to amend.

The motion is granted as to the Fifth Count with respect to defendant Sergeant Jeffrey Hamel and denied as to defendant Officer Fernando Lucas.

The motion is denied as to the Second Count and the Third Count.

Any amended complaint shall be filed by September 12, 2023, and service on the City of Waterbury must be completed by September 22, 2023.

It is so ordered.

---

of liability." In re Charter Hill Assocs., 188 B.R. 5, 8-9 (Bankr. D. Conn. 1995).

Dated this 9th day of August 2023, at Hartford,

Connecticut.

_____/s/AWT_____
Alvin W. Thompson
United States District Judge
