UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------- x
                                 :
AVIS QUEZADA                     :
                                 :  Civil No. 3:22-CV-77 (AWT)
        Plaintiff,               :
                                 :
v.                               :
                                 :
JEFFREY HAMEL, FERNANDO LUCAS,   :
and CITY OF WATERBURY,           :
                                 :
        Defendants.              :
-------------------------------- x
```

## ORDER CERTIFYING QUESTION
## TO THE SUPREME COURT OF CONNECTICUT

The Supreme Court of Connecticut "may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state." Conn. Gen. Stat. § 51-199b(d).

To determine whether to certify a question to the Supreme Court of Connecticut, a federal court must consider, among other factors: "(1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation." Bifolck v. Philip Morris, Inc., No. 06-cv-1768 (SRU), 2014 WL 585325, at *2 (D. Conn. Feb. 14, 2014) (quoting

1

O'Mara v. Town of Wappinger, 485 F.3d 693, 698 (2d Cir. 2007)). Certification allows state courts "to define state law", Gutierrez v. Smith, 702 F.3d 103, 116 (2d Cir. 2012), rightfully affording them the "first opportunity to decide significant issues of state law through the certification process . . . ." Munn v. Hotchkiss Sch., 795 F.3d 324, 334 (2d Cir. 2015), certified question answered, 326 Conn. 540 (2017) (citation omitted). Therefore, certification is especially proper where the issues "implicate[] the weighing of policy concerns", because "principles of comity and federalism strongly support certification." Id. at 334 (citation omitted).

Under section 51-199b of the Connecticut General Statutes, a certification order must contain:

(1) The question of law to be answered;

(2) The facts relevant to the question, showing fully the nature of the controversy out of which the question arose;

(3) That the receiving court may reformulate the question; and

(4) The names and addresses of counsel of record and unrepresented parties.

Conn. Gen. Stat. § 51-199b(f).

I.  **BACKGROUND**

Plaintiff Avis Quezada brought a six-count complaint against the City of Waterbury (the "City"), Waterbury police sergeant Jeffrey Hamel ("Hamel"), and Waterbury police officer

2

Fernando Lucas ("Lucas"). See Third Amended Complaint ("Compl.") (ECF No. 53). The first count is a claim against the City and Hamel in his official capacity, alleging that the conditions in the holding facility in which Quezada was held as a pretrial detainee violated his rights under the Fourteenth Amendment. The second count is a claim against Lucas, pursuant to 42 U.S.C. § 1983, for use of excessive force. The third count is a claim against Lucas for assault and battery. The fourth count is a claim against Lucas for intentional infliction of emotional distress. The fifth count is a claim against Lucas for negligent infliction of emotional distress. The sixth count is an indemnification claim against the City.

    The defendants moved to dismiss most of the claims, including the fifth count, the claim for negligent infliction of emotional distress. In the motion to dismiss, the defendants argued, with respect to this claim, that the imminent harm to an identifiable person exception "ha[d] not been alleged by Plaintiff." Defs. Mot. to Dismiss (ECF No. 37-1) at 20. The court disagreed with the defendants' contention that the identifiable person-imminent harm exception must be alleged in the complaint, and denied the motion to dismiss the fifth count with respect to Lucas, while granting it on other grounds with respect to Hamel. See Ruling on Motion to Dismiss (ECF No. 50) at 17-19. Although the defendants later moved for summary

judgment, most of the claims, including the claim for negligent infliction of emotional distress, are set to proceed to trial. See Order re Partial Summary Judgment (ECF No. 76) at 7-9.

Relevant to the fifth count, the plaintiff has produced evidence of the following. The plaintiff "was taken into custody by the Waterbury Police Department and, as a pretrial detainee, placed into its Holding Facility," where the conditions were "filthy and extremely cold" and where "food was served sparingly." See Pl.'s Mem. in Opposition to Defs. Mot. for Partial Summary Judgment ("Pl.'s Opposition")(ECF No. 69) at 1. As a result of the conditions in the holding facility, the plaintiff became ill and was taken to St. Mary's Hospital on three occasions. See id. at 2. Each time he was returned to the holding facility, with its unhealthy conditions. See id.

On the third occasion, the plaintiff was taken to the hospital by Lucas. See id. The plaintiff was handcuffed, arm and leg, to his hospital bed. He was under the supervision of Lucas, who was hostile to the plaintiff. See id. During the plaintiff's hospital stay, the plaintiff asked Lucas if he could access the hospital room's television remote. Lucas denied the plaintiff's requests and "responded with racial slurs and derogatory statements." See Pl.'s L.R. 56(a)(2) Statement of Facts (ECF No. 69-1) at 18-19. When Lucas saw the plaintiff reaching for the television remote, "Lucas became angry, using abusive language,

4

physically assaulted plaintiff," and "punched plaintiff repeatedly in the head and body with a closed fist, causing injury to [the] plaintiff's body, right eye, and head, as well as severe emotional harm." Pl.'s Opposition at 2.

During his deposition, Lucas testified to the following. The plaintiff had been "yell[ing]" during his stay in the hospital that he "needed the phone." Lucas Deposition Transcript (ECF No. 69-12) at 4. At one point, Lucas saw the plaintiff "trying to straddle the bed." Id. Acting out of concern that the plaintiff "would have been able to access the TV remote wire, the telephone, medical supplies, medical instruments" or "leave" the immediate area, Lucas "verbally [told the plaintiff] that [he] need[ed] to get back in bed." Id. at 4. According to Lucas, the plaintiff "continued to yell, swear and continued to try to get over the bed rail." Id. Lucas then physically pull[ed] him back onto the bed." Id. In the struggle that ensued, Lucas "struck," i.e., "punched," the plaintiff several times. Id. at 5, 9.

In moving for summary judgment on the plaintiff's claim for negligent infliction of emotional distress, the defendants argued that "dismissal of Plaintiff's NIED claim is warranted in light of plaintiff's failure to adduce any evidence which proves that the imminent harm exception [to governmental immunity] applies to the alleged altercation with Officer Lucas at St.

5

Mary's Hospital." Defs. Mem. (ECF No. 64-1) at 28. They maintain that the imminent harm to an identifiable person exception only applies in "scenarios involving a failure to act that subjects an identifiable person to imminent harm at the hands of some third party." Id. at 29. In opposition, the plaintiff cites to several District of Connecticut cases in which the exception has been applied to defendant police officers' use of force against a plaintiff. See Pl.'s Opposition at 20-21.

## II. DISCUSSION

There are two aspects to the parties' disagreement about the imminent harm to an identifiable person exception: (1) whether the exception can also be applicable where the public officer's conduct is in the form of affirmative acts, as opposed to only where there is a failure to act; and (2) whether the exception can be applicable in cases where the imminent harm is harm at the hands of the defendant public officer, as opposed to harm at the hands of a third person. Principles of comity and federalism make it appropriate that the precise contours of this exception to governmental immunity be determined by state law.

### A. Affirmative Act Versus Failure to Act

It appears that the Supreme Court of Connecticut first recognized the imminent harm to an identifiable person exception in Sestito v. Groton, 178 Conn. 520, 528 (1979), and

subsequently applied it in Shore v. Town of Stonington, 187 Conn. 147, 153-54 (1982).

In Evon v. Andrews, 211 Conn 501 (1989), the Court identified three instances where liability may attach to a municipal employee even though the act or omission in question is discretionary in nature:

> first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm; see, e.g., Sestito v. Groton, 178 Conn. 520, 528 (1979); second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; see, e.g., [Conn. Gen. Stat. §] 7-108 creating municipal liability for damage done by mobs; and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence. See, e.g., Stiebitz v. Mahoney, 144 Conn. 443, 448–49 (1957).

Evon, 211 Conn. at 505.

In Doe v. Petersen, 279 Conn. 607 (2006), the Court quoted Evon with respect to the imminent harm to an identifiable person exception and then articulated a three-element test for this exception. The Court stated:

> Discretionary act immunity is abrogated when "the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." Evon, 211 Conn. at 505. By its own terms, this test requires three things: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm. The resolution of the present appeal turns on the third requirement.

7

Doe v. Petersen, 279 Conn. at 616. No authority was cited for the three-element test.

Because the three-element test set forth in Doe v. Petersen follows a sentence discussing a public official's failure to act, the reference in the third element to a public official's "conduct" could be understood to refer to a public official's "failure to act." Id.

With the exception of one case, Borelli v. Renaldi, 336 Conn. 1 (2020), a series of subsequent cases decided by the Court have followed Doe v. Petersen's formulation of the imminent harm to an identifiable person exception. A statement describing the exception as one based on a failure to act has been followed by a statement of the three-element test articulated in Doe v. Petersen. See, e.g., Edgerton v. Town of Clinton, 311 Conn. 217, 230-31 (2014); Haynes v. City of Middletown, 314 Conn. 303, 312-13 (2014); Strycharz v. Cady, 323 Conn. 548, 573 (2016); Martinez v. City of New Haven, 328 Conn. 1, 8 (2018); Brooks v. Powers, 328 Conn. 256, 258, 261 (2018).

But in Belanger v. City of Hartford, 578 F.Supp.2d 360 (D. Conn. 2008), the court's analysis of the imminent harm to an identifiable person exception was as follows:

> The Connecticut Supreme Court has laid out a three part test for the identifiable person-imminent harm exception to apply: '(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject

> that victim to that harm.' Doe v. Petersen, 279 Conn. 607, 616 (Conn. 2006). Notably, the third part of the test refers to an official's 'conduct' and does not specify that the officer must have failed to act. That court has also articulated the policy underlying the exception that the harm be so imminent as to create a duty for the officer to act with due care. See Fleming v. City of Bridgeport, 284 Conn. 502, 533-35 (Conn. 2007).

Belanger, 578 F.Supp.2d at 367. Also, in Odom v. Matteo, 772 F.Supp. 2d 377 (D. Conn. 2011), the court cited to Connecticut Superior Court cases for the proposition that the imminent harm to an identifiable person exception applies in cases where defendant police officers used excessive force against a person:

> Connecticut courts have held that where, as here, an officer is alleged to have used excessive force against a person, he may be found to have subjected an identifiable person to imminent harm and therefore is not protected from suit by the doctrine of governmental immunity. See, e.g., Santana v. Rohan, No. CV040830569S, 2005 WL 1634310, at *5 (Conn. Super. Ct. June 7, 2005) (holding that suspect who was shot by police was an identifiable person subject to imminent harm for purposes of governmental immunity); Balogh v. City of Shelton, No. CV990067521S, 2002 WL 523225, at *8 (Conn. Super. Ct. Mar. 18, 2002) (denying summary judgment on the basis of governmental immunity where plaintiff offered sufficient evidence that her arrest without probable cause and with excessive force subjected her to harm that was significant, foreseeable, and of limited duration); Castorina v. Stewart, No. CV 950324487, 1998 WL 309393, at *6–7 (Conn. Super. Ct. June 3, 1998) (holding that person who was allegedly falsely arrest[ed] and assaulted by a police officer could be found by a jury to be an identifiable person subject to imminent harm).

Odom, 772 F.Supp. 2d at 395. See also, e.g., Holeman v. City of New London, 330 F. Supp. 2d 99, 106-08, 118-19 (D. Conn. 2004) (plaintiffs claimed that defendant police officers were

negligent in using physical force on the plaintiff's decedent during a police stop); Taylor v. City of Middletown, 436 F.Supp.2d 377, 379-81, 388 (2006)(plaintiffs claimed that defendant police officers were negligent in lobbing a flash-bang explosive device in their direction, physically injuring the plaintiffs, when executing a search warrant of the plaintiffs' home); Galindez v. Miller, 285 F.Supp.2d 190, 194-95 (2003) (plaintiff claimed that defendant police officer negligently used physical force in arresting the plaintiff); Keeney v. City of New London, 196 F.Supp.2d 190, 200, 202 (2002) (plaintiff claimed that defendant officers were negligent in using physical force on the plaintiff's decedent after the decedent was handcuffed).

Also, a plaintiff could argue that Borelli, which is a relatively recent case, supports the proposition that the exception is not limited to cases where there is a failure to act on the part of the public officer. There, the Court stated:

> In the present case, only the identifiable victim-imminent harm exception to governmental immunity is at issue. We have explained that this exception, which "has received very limited recognition in this state"; (internal quotation marks omitted) Grady v. Somers, 294 Conn. 324, 350 (2009); "has three requirements: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm. ... All three must be proven in order for the exception to apply." (Citation omitted; internal quotation marks omitted.) Edgerton v. Clinton, supra, at 230-31.

Borelli, 336 Conn. at 28. Thus, in Borelli, the statement of the three-part test was not preceded by the statement, made in Doe v. Petersen, that "[d]iscretionary act immunity is abrogated when 'the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . .'" 279 Conn. at 616 (quoting Evon, 211 Conn. at 505).

### B. Harm at the Hands of a Third Person

With two exceptions, the above-mentioned cases decided by the Supreme Court of Connecticut involving the imminent harm to an identifiable person exception have been ones where the imminent harm was harm at the hands of a third person. See, e.g., Martinez, 328 Conn. at 3-5 (defendant school officials allegedly failed to prevent injury to student resulting from another student's running with scissors); Strycharz, 323 Conn. at 573 (defendant school administrators allegedly failed to take steps to prevent a student's unauthorized departure from campus during school hours and the student was struck by a vehicle); Haynes, 314 Conn. at 306-08 (defendant school officials allegedly failed to prevent a student's injury, which occurred when the student was pushed by another student into the jagged edge of a broken locker); Edgerton, 311 Conn. at 234-36 (defendant 911 operator allegedly failed to instruct a civilian to stop pursuing another car, which led to a fatal crash);

Peterson, 279 Conn. at 611 (defendant municipal program director allegedly failed to acknowledge, respond to or investigate plaintiff's report of being sexual assaulted by a program counsellor); Shore, 187 Conn. at 150-51, 153-54 (defendant police officer allegedly failed to stop motorist who caused fatal injury to plaintiff's decedent); Sestito, 178 Conn. at 522-24 (defendant police officer allegedly failed to stop one civilian from fatally injuring another in a violent brawl witnessed by the officer). Although all of these cases involved harm at the hands of a third person, a requirement that the harm be at the hands of a third person was never expressly stated.

As to the two exceptions, in neither case was the harm caused by the affirmative acts of a defendant public officer or by a clearly identifiable third person. In Evon, the plaintiff claimed that the failure by the defendant public officials to properly "enforce various statutes, regulations and codes concerning the maintenance of rental dwellings" resulted in a rental unit being destroyed by fire and the death of tenants. 211 Conn. at 502-05. In Brooks, the plaintiff's administratrix claimed that the defendant constables negligently failed to take steps that would have prevented the decedent from drowning. 328 Conn. at 259-64.

With respect to this question, both sides appear to rely solely on the cases on which they rely with respect to the first question.

### III. QUESTION FOR CERTIFICATION

Based on the foregoing, the following questions are being certified to the Supreme Court of Connecticut:

1) Is the imminent harm to an identifiable person exception applicable only where the public officer's allegedly negligent conduct is in the form of a failure to act?

2) Is the imminent harm to an identifiable person exception applicable only where the alleged harm is at the hands of a third person?

As provided in section 51-199b(f)(3), the Supreme Court of Connecticut will, of course, reformulate or augment these questions as it sees fit.

### IV. NAMES AND ADDRESSES

The names and addresses of counsel of record are as follows:

    Scott R. Lucas
    Lucas & Varga LLC
    2425 Post Road, Suite 200
    Southport, CT 06890
    203-227-8400
    Fax: (203) 227-8402
    Email: slucas@lucasvargalaw.com


    Joseph A. Mengacci
    Corporation Counsel's Office-Wtby
    City Of Waterbury
    235 Grand St., 3rd Floor
    Waterbury, CT 06702
    203-574-5731

```
     Fax: 203-574-8340
     Email: jmengacci@waterburyct.org
```

**V.   CONCLUSION**

The Clerk is ordered to stay this case pending the response of the Supreme Court of Connecticut.

It is so ordered.

Signed this 17th day of December 2024 at Hartford, Connecticut.

                                    /s/   AWT
                                 Alvin W. Thompson
                              United States District Judge